UNITED STATES of America, Appellee,

v.

Israel BROYDE, Appellant.

No. 1047, Docket 93–1626.

United States Court of Appeals,
Second Circuit.

Argued March 30, 1994.

Decided April 18, 1994.

Susan Corkery, Brooklyn, NY (Zachary W. Carter, U.S. Atty., and Emily Berger, Asst. U.S. Atty., on the brief), for appellee.

Steven M. Statsinger, New York City, for appellant.

Before: TIMBERS, CARDAMONE, and WINTER, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from a judgment entered in the Eastern District of New York, Sterling Johnson, Jr., *District Judge*, which sentenced appellant to ten months imprisonment, three years supervised release, $10,920 restitution, and a $50 special assessment, appellant contends that we should vacate and remand that part of the case in which the judgment imposed restitution.

We affirm.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Between March 1, 1992 and June 17, 1992, appellant Broyde conspired to purchase food stamps at a reduced value. Broyde, a co-owner of the Deluxe Grocery and Deli in Brooklyn, was held responsible for the illegal purchase on eight occasions of $71,000 worth of food stamps. On March 5, 1993, pursuant to a written plea agreement, he pleaded guilty to conspiracy to acquire and possess food stamps. He acknowledged the potential penalties that he faced and admitted that during the time period charged he had conspired to purchase food stamps illegally.

The presentence report (PSR) stated that the amount of restitution should be set at $10,920—the difference between the value of the unrecovered food stamps illegally purchased and the amount paid to the undercover agent. As to Broyde's financial condition, the PSR stated that he had no personal debts and purported to have no assets apart from the store that he owned. This he and a former partner had purchased for $45,000 in 1990 with a $7,500 down payment. The report stated that Broyde claimed to have netted $16,000 personal income from his business venture and that he had separated from his wife in 1991 and had not provided her with child support.

Before the scheduled sentencing date, Broyde's counsel wrote a letter to the court seeking a downward departure. He claimed that he had committed the offense because of "tremendous financial and psychological pressures". On September 10, 1993, a judgment was entered which sentenced him as stated above. The court declined to grant a downward departure, but sentenced him to the low end of the guideline range. Moreover, the court directed that restitution was to be paid "according to [Broyde's] ability to pay, and full financial disclosure". This appeal followed.

Broyde contends that we should vacate and remand that part of the judgment that imposed restitution, since the court failed to consider the factors set forth in 18 U.S.C. § 3664(a) regarding Broyde's ability to pay restitution.

## II.

Section 3664(a) provides that restitution may be ordered only if the sentencing court considers:

"the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate".

"Although the court need not set forth its findings in detail, the record must demonstrate that the court has considered these factors in ordering restitution". *United States v. Tortora*, 994 F.2d 79, 81 (2 Cir. 1993).

The court did not state expressly on the record that it had considered the factors set forth in § 3664(a). The court did state, and the government concedes, that the $10,920 restitution was to be paid "according to [Broyde's] ability to pay, and full financial disclosure".

The fact that the restitution order is contingent on Broyde's ability to pay and full financial disclosure distinguishes this case from *Tortora*. Unlike *Tortora*, the government may not take any action against Broyde for failing to pay restitution in the face of a claim by Broyde that he is unable to pay. Any such action would have to follow a proceeding in the district court finally setting the amount of restitution and a subsequent failure on Broyde's part to make the requisite payments. Except for the "amount of the loss sustained" by the victim, all of the factors enumerated in § 3664(a) would be considered in such an action. With regard to the amount of the loss, the court adopted the precise amount stated in the PSR. That figure is not disputed by Broyde.

We affirm the judgment imposing restitution. We direct that the final amount of restitution ordered, if disputed, must be made by the district court and not by the probation officer. *United States v. Weichert*, 836 F.2d 769, 772 (2 Cir.1988), *cert. denied*, 488 U.S. 1017 (1989).

## III.

To summarize:

The court properly considered the factors set forth in § 3664(a). It made the restitution order contingent on Broyde's ability to pay and full financial disclosure. The final amount of restitution ordered, if disputed, must be made by the district court and not by the probation officer.

Affirmed.