UNITED STATES of America, Appellee,

v.

Mary M. PORTER, Defendant–Appellant.

No. 1381.

Docket 93–1760.

United States Court of Appeals,
Second Circuit.

Argued April 28, 1994.

Decided Nov. 29, 1994.

---

Michael G. Rossetti, Asst. U.S. Atty., Buffalo, NY (Patrick H. NeMoyer, U.S. Atty., of counsel), for appellee.

Jonathan W. Feldman, Federal Public Defender, Buffalo, NY, for defendant-appellant.

Before: LUMBARD, VAN GRAAFEILAND and WINTER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Mary M. Porter appeals from a judgment of conviction of the United States District Court for the Western District of New York (Skretny, J.) which followed her guilty plea to a charge of wire fraud (18 U.S.C. § 1343). We vacate that portion of the judgment dealing with restitution, and remand to the district court for resentencing.

Between 1988 and 1991, Porter, while holding sales assistant positions at two brokerage firms, caused funds belonging to others to be transferred into a personal checking account that she held jointly with her husband. On June 3, 1993, Porter waived indictment and pled guilty. The district court sentenced her to six months of imprisonment and three years of supervised release, and ordered payment of restitution in the full amount of the defalcation, $169,043.31.

Porter's Presentence Report stated that she was 34 years old and the mother of two children. Her younger child, age six, was in her sole custody and dependent upon her for support. She had joint custody of her older child, who was eleven years of age. The Report also disclosed that Porter's liabilities and monthly expenses greatly exceeded her assets and monthly income and that she would not be able to pay a fine; that she owed over $10,000 in overdue credit card debt, was approximately $1,300 behind in her rental payments, and had recently applied for food stamps and rental assistance. Porter contends on appeal that, given her indigent status and dim economic prospects, the district court's restitution order in the amount of $169,043.31 was unduly harsh and an abuse of discretion.

As is evident from the district judge's remarks at the sentencing hearing, he was fully aware of appellant Porter's financial situation and took this into account in directing restitution:

With respect to restitution, I am going to direct that there be full restitution in this case. I have considered the loss sustained by the victims in this case as a result of your conduct and committing the crime that you have been charged with. I know what your financial resources are. I expect that I know the earning ability that you have based on your history of working. And I've considered, I think, all of the other appropriate factors necessary in making this type of a determination. With respect to how that is to be paid back, discretion will be given to the probation office to set a schedule of repayment with respect to the full amount of restitution in the amount of one hundred sixty-nine thousand forty-three dollars and thirty-one cents, on a schedule that will enable you, recognizing that you have a son to take care of, recognizing that your earning capacity will likely at the outset be modest, but the schedule will enable you to maintain a modest lifestyle and provide for yourself and for your child, but again, the discretion as to how and in what amounts, that is to be determined by the probation officer in this case.

While we concur in the district judge's expressed concern about the defendant's ability to make restitution, we hold that the procedure he adopted in response to that

concern was improper and that, therefore, the defendant must be resentenced.

◼ In directing restitution in the manner that he did, the district judge was attempting to solve a problem that has troubled sentencing judges ever since the enactment of the Victim and Witness Protection Act of 1982, Pub.L. No. 97–291, 96 Stat. 1248, *viz.,* how to direct restitution by an indigent defendant. Section 3579 of that Act, now codified in substance as 18 U.S.C. § 3663, provides that for certain designated offenses a trial court may order that the defendant make restitution. Despite the use of the word "may," we have held that the purpose of the restitution provision is to require restitution whenever possible. *See United States v. Atkinson,* 788 F.2d 900, 903 (2d Cir.1986). *But see United States v. Tortora,* 994 F.2d 79, 81 (2d Cir. 1993). Although the intent of the 1982 Congress is not necessarily evidenced by enactments of the 1994 Congress, we find support for the concept of mandatory restitution in provisions of the recently enacted Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796. Section 250002 of that Act, codified as 18 U.S.C. § 2327, dealing with telemarketing fraud, provides that the court "shall" order restitution for any covered offense, even if only for a nominal amount.[1] A similar provision is contained in section 40113 of the Act, codified as 18 U.S.C. § 2248, which deals with sex crimes.

◼ It is well established that the indigency of a defendant does not per se preclude the ordering of restitution. *See Atkinson, supra,* 788 F.2d at 904; *see also United States v. Logar,* 975 F.2d 958 (3d Cir.1992), and cases cited therein at 962. The problem in indigency cases is caused in large part by the prescribed timing of the restitution order. Section 3663 of Title 18 provides that "[t]he court, when sentencing" may order that the defendant make restitution. *Id.* (a)(1). The statute also states that "[t]he court" may require the defendant to make restitution within a specified period or in specified installments, *id.* (f)(1), and that, if not otherwise provided by "[t]he court," restitution shall be made immediately, *id.* (f)(3). Section 3663 provides, in short, that the order of restitution is part of the sentencing process. *United States v. Berrios,* 869 F.2d 25, 28 (2d Cir.1989); *United States v. Pomazi,* 851 F.2d 244, 247 (9th Cir.1988). This means that, if restitution is to be ordered, it must be done when the court imposes sentence. *See Atkinson, supra,* 788 F.2d at 904; *see also United States v. Sasnett,* 925 F.2d 392, 398–99 (11th Cir.1991); *United States v. Prendergast,* 979 F.2d 1289, 1293 (8th Cir. 1992).

The dilemma thus created was summarized by this Court in *Atkinson, supra,* 788 F.2d at 904:

District judges are not seers and cannot accurately predict a defendant's economic future. We have recognized that it is constitutional to impose financial obligations on "a defendant who is indigent at the time of sentencing but subsequently acquires the means to discharge his obligations." *[United States v.] Brown,* 744 F.2d [905] at 911 [ (2d Cir.1984) ]; *cf. United States v. Pagan,* 785 F.2d 378, 381 (2d Cir.1986) (constitutional to impose a special assessment under 18 U.S.C. § 3013 on an indigent). In fact, "[r]ecognizing that indigency may be temporary, Congress provided for payment of restitution during a period of up to five years after the completion of any prison sentence imposed." *Brown,* 744 F.2d at 911 (citing 18 U.S.C. § 3579(f)(2)(B)).

Since many defendants who are sentenced to terms of incarceration do not have the funds to make restitution immediately, restitution orders would be severely limited if district judges did not have discretion to discount the importance of present indigency in performing the statutory balance. Although there may be little chance that it will ever be made, if full restitution is not ordered at the time of

---

1. The word "nominal" when used in connection with a plaintiff's monetary recovery is a term of art customarily defined as "one dollar or less." *See, e.g., Carey v. Piphus,* 435 U.S. 247, 267, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978); *Thompson v. Burke,* 556 F.2d 231, 240 (3d Cir. 1977); *Magnett v. Pelletier,* 488 F.2d 33, 35 (1st Cir.1973). Query whether Congress had this definition in mind when it enacted the restitution provisions in the 1994 Act.

sentencing, an indigent defendant would evade the statutory purpose of making the victim whole in the event he should subsequently come into sufficient funds.

■ We hold that a sentencing court cannot resolve this dilemma by authorizing a probation officer to make post-sentencing decisions as to either the amount of the restitution, *see United States v. Weichert*, 836 F.2d 769, 772 (2d Cir.1988), *cert. denied*, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 802 (1989), or the scheduling of installment payments, *see United States v. Ahmad*, 2 F.3d 245, 248–49 (7th Cir.1993). For this reason, we remand to the district court for resentencing.

■ In so doing, we do not purport to tell the district judge what he should do; we instruct him only as to what he cannot do; i.e., he cannot delegate the judicial functions inherent in the grant of restitution to the probation department. However, we would be remiss if we did not direct the district court's attention to several other provisions of the 1994 Act. Sections 2327(d) and 2248(d) of that Act as codified provide that "[a] victim or the offender may petition the court at any time to modify a restitution order as appropriate in view of a change in the economic circumstances of the offender."

Prior to the Supreme Court's opinion in *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), there was substantial authority for the proposition that a sentence might not be increased where the punishment already has been partly suffered. *See id.* in the Court of Appeals, 604 F.2d 769, 785 (2d Cir.1979); *United States v. Sacco*, 367 F.2d 368, 369 (2d Cir.1966); *United States v. Turner*, 518 F.2d 14, 15 (7th Cir.1975). In decisions involving restitution orders subsequent to *DiFrancesco*, we apparently followed, albeit implicitly, the pre-*DiFrancesco* rule. *See United States v. Gelb*, 944 F.2d 52, 57 (2d Cir.1991), *Atkinson, supra*, 788 F.2d at 904, and *United States v. Brown*, 744 F.2d 905, 911 (2d Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984). Most of the other circuits have strictly limited awards to amounts that the defendant is, or clearly is expected to be, able to pay. *See, e.g., United States v. Bailey*, 975 F.2d 1028, 1032–33 (4th Cir.

1992); *Logar, supra*, 975 F.2d at 962–64. However, several of these courts based their holdings in part upon their stated belief that if a defendant's financial situation should improve, the Government could return to the sentencing court and ask it to modify its order. *See Bailey, supra*, 975 F.2d at 1032; *United States v. Mitchell*, 893 F.2d 935, 936 (8th Cir.1990); *United States v. Mahoney*, 859 F.2d 47, 51 n. 6 (7th Cir.1988). The right of the Government to do so is not as clear as these decisions would make it appear.

In *United States v. DiFrancesco, supra*, the Court altered the long-standing double jeopardy rule against increased punishment by holding in substance that a sentence can be altered so long as the defendant has no legitimate expectation of finality in the original sentence. 449 U.S. at 139, 101 S.Ct. at 438–39; *see Stewart v. Scully*, 925 F.2d 58, 61–65 (2d Cir.1991). Where the restitution portion of a sentence carries with it a legitimate expectation of finality, the traditional rule still may be applicable. *See United States v. Fogel*, 829 F.2d 77, 88 (D.C.Cir. 1987); *United States v. Earley*, 816 F.2d 1428, 1433–34 (10th Cir.1987); *United States v. Jones*, 722 F.2d 632, 636–39 (11th Cir. 1983).

We assume that Congress included the provisions of sections 2327(d) and 2248(d) in the 1994 Act to eliminate any claims of expected finality, thus permitting a sentencing court to make a modest restitution award that can be increased if the defendant's financial condition should change for the better. Whether these provisions can be applied in the instant case, either by reference to the statutory terms or by incorporation of similar terms in the restitution order, are matters to be decided, in the first instance at least, by the district court.

We vacate the portion of the sentence under appeal providing for restitution and remand to the district court for resentencing.

WINTER, Circuit Judge, concurring:

I concur in the remand for resentencing. I agree with my colleagues that a district judge may not delegate the scheduling of installment payments to a probation officer.

However, I have an additional problem with the order in question.

The district judge sought in that order to require full restitution of over $169,000 but on a payment schedule that would allow appellant "to maintain a modest lifestyle and provide for [her]self and [her] child." I am perplexed by this order because, under the statute, the restitution must be completed within five years. 18 U.S.C. § 3579(f)(2). Given that appellant is presently indigent and is unlikely to find highly remunerative employment upon her release from prison as a convicted embezzler, she cannot conceivably repay over $169,000 within five years of her release, much less simultaneously maintain a modest lifestyle and provide for her child.

Section 3664(a) requires the sentencing court to take into account "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents." 18 U.S.C. § 3664(a). Ordering restitution of the full amount of the victim's loss no matter how far beyond any prospective ability of the defendant to pay is flatly inconsistent with that provision. Caselaw in our circuit and others is not to the contrary.

Other circuits require that restitution be limited to amounts that have some reasonable probability of being within the defendant's means. *See United States v. Bailey,* 975 F.2d 1028, 1032 (4th Cir.1992) (requiring defendant be able to "feasibly comply" with restitution order); *United States v. Logar,* 975 F.2d 958, 962–64 (3d Cir.1992) (requiring realistic chance that defendant be able to pay restitution); *United States v. Grimes,* 967 F.2d 1468, 1473 (10th Cir.) (refusing to uphold restitution order "absent any evidence the defendant is able to satisfy [it]"), *cert. denied,* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992); *United States v. Rogat,* 924 F.2d 983, 985 (10th Cir.) (holding possibility of repayment "cannot be based solely on chance"), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991); *United States v. Mitchell,* 893 F.2d 935, 936 n. 1 (8th Cir.1990) ("[W]e do not accept the government's argument that, regardless of a defendant's present ability to pay, an unreasonably high amount of restitution is proper on the chance that the defendant may win the lottery."); *United States v. Mahoney,* 859 F.2d 47, 51 n. 6 (7th Cir.1988) ("The prospect of the defendant's winning a lottery—present in any case—is too remote a possibility to justify the restitution order in this case."); *United States v. Sleight,* 808 F.2d 1012, 1021 (3d Cir.1987) (restitution order should not be one that "a defendant cannot realistically pay").

Although our decision in *United States v. Atkinson,* 788 F.2d 900 (2d Cir.1986), suggests that considerable guesswork may be involved in setting a restitution figure for indigents, id. at 904, it did not authorize amounts that cannot be repaid without Hollywood miracles. Nor does *United States v. Brown,* 744 F.2d 905 (2d Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984), or *United States v. Gelb,* 944 F.2d 52 (2d Cir.1991), stand for the proposition that an order of restitution need not take into account likely ability to pay. Rather, they state only that current indigency does not bar any order of restitution whatsoever. These cases are further distinguishable on the facts. In *Atkinson* and *Brown* the orders of restitution were not beyond the realm of possibility, each entailing annual payments of less than $6,000. *Atkinson,* 788 F.2d at 901; *Brown,* 744 F.2d at 908. *Gelb* involved an order of restitution of $5 million, and we remanded for reconsideration in light of the factors set out in Section 3664 and pointedly noted for the district court's benefit that the award of restitution could be less than the full amount of loss. *Gelb,* 944 F.2d at 56–57. The order before us thus seems inconsistent with *Gelb* and the caselaw of other circuits because the district court never explained how repayment of $169,000 in 5 years—whatever the repayment schedule—can be reconciled either with appellant's meager prospects for remunerative employment or with an expectation that she will be able to lead a modest lifestyle and provide for her child.

I appreciate that a judge who orders full restitution in circumstances such as the present case generally anticipates—as my colleagues suggest—that he or she can reduce the amount should it prove to be beyond the defendant's means. However, as my colleagues also note, the statute contemplates that the judgment as to ability to pay be

made, at least in a preliminary fashion, at sentencing,[1] and for a good reason. A defendant subject to an impossible restitution order may be tempted to pay little or nothing because partial restitution offers no assurance of being considered by the court as satisfaction of the order. As a result, a defendant subject to an impossible restitution order has less incentive to seek remunerative, rehabilitative, and non-criminal employment and to maximize his or her income than a defendant subject to a difficult but doable order. Indeed, the only goal of sentencing that is fulfilled by an impossible order is to provide against a situation in which the defendant has secreted assets or encounters a one-in-a-million windfall such as winning a lottery. However, even if principles of finality do prevent the government from seeking to increase the ordered restitution, as my colleagues suggest, the law of perjury and the ability of a victim to bring a civil action are reasonable safeguards against such events.

I would therefore remand for resentencing at a level of restitution consonant with some reasonable estimate of the future means of appellant.

---

1. In *United States v. Broyde,* 22 F.3d 441 (2d Cir.1994), we affirmed a restitution order for the full loss to the victim that required future proceedings to determine the final amount. However, doubt existed as to the fullness of the defendant's financial disclosure. *Broyde* is thus a very limited exception to the otherwise universally recognized rule that the amount must be set at sentencing.