**UNITED STATES of America, Appellee,**

v.

**Nissim MIZRACHI, Defendant–Appellant.**

**No. 491, Docket 94–1215.**

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1994.

Decided Feb. 16, 1995.

---

Peter Goldberger, Ardmore, Penn. (Anna M. Durbin, Pamela A. Wilk, Law Offices of Alan Ellis, Ardmore, Penn., on the brief), for defendant-appellant, and E. Stewart Jones and David J. Taffany, Troy, NY, also submitted a brief for defendant-appellant.

Thomas Spina, Jr., Asst. U.S. Atty. (Thomas J. Maroney, U.S. Atty., Albany, NY, on the brief), for appellee.

Before NEWMAN, Chief Judge, FEINBERG and MESKILL, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal primarily concerns application of the multi-count analysis of the Sentencing Guidelines. Nissim Mizrachi appeals from the April 21, 1994, judgment of the District Court for the Northern District of New York (Thomas J. McAvoy, Chief Judge) convicting him, on his plea of guilty, of arson, mail fraud, and money laundering offenses.

The conduct underlying these offenses involved the January 1992 defrauding of a German bank of $4 million, borrowed to purchase and modernize a warehouse complex in Amsterdam, New York, and the August 1992

destruction by fire of portions of that complex in an attempt to defraud an insurance company of $14 million. The details of the offenses are not necessary to an understanding of appellant's claims, except to note that the evidence recounted in appellant's presentence report established that the planning of the arson began contemporaneously with the bank borrowing, and permitted the inference that appellant borrowed the money with the intention of both buying the building and destroying it for the insurance. A six-count information charged Mizrachi with conspiracy to commit arson and mail fraud, in violation of 18 U.S.C. § 371 (Count One); arson, in violation of 18 U.S.C. § 844(i) (Count Two); two counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts Three and Four); money laundering, in violation of 18 U.S.C. § 1957 (Count Five); and forfeiture, as provided by 18 U.S.C. § 982(a)(1), (b)(1)(B) (Count Six). The District Court sentenced appellant to concurrent terms of imprisonment of 60 months on Count One and 78 months on Counts Two through Five, and ordered forfeiture of $4 million and restitution of $4.1 million.

### Discussion

Of the various issues raised on appeal, it will be convenient to turn first to the claim that the District Court improperly applied the multi-count analysis set forth in the Sentencing Guidelines. U.S.S.G. §§ 3D1.1—3D1.4. One of the major innovations of the Guidelines was the solution to the problem of sentencing a defendant convicted of multiple counts. Prior to the Guidelines, sentencing judges often considered themselves limited to a choice between completely concurrent and completely consecutive sentences. Completely concurrent sentences were often too lenient, imposing no penalty for the offenses other than the offense meriting the highest sentence. Completely consecutive sentences were often too harsh, aggregating the sentences merited for each count.

The Guidelines' multi-count analysis interposed a sensible middle ground between completely concurrent and completely consecutive sentences that uses a combination of concurrent and partially consecutive sentences. Under this analysis, closely related counts are, in effect, treated as a single offense, *id.* § 3D1.2, and counts not closely related receive incremental penalties that produce a total sentence significantly less than what would have resulted if the sentences were calculated for each count separately and then aggregated, *id.* § 3D1.4. The extent of the increments reflects both the number of unrelated offenses and their seriousness compared to the most serious offense. *Id.* Once the combined offense level for all counts is determined under the multi-count analysis, *id.* § 3D1.1(a)(3), and translated into a sentence by using the sentencing table, *id.,* ch. 5, pt. A, the sentence is imposed in either of two ways. If the count carrying the highest statutory maximum permits a sentence at least as high as the sentence called for by the sentencing table, such a sentence is imposed on that count and sentences on all other counts are imposed to run concurrently. *Id.* § 5G1.2(c). If the statutory maximum sentence for the most serious count is less than the sentence called for by the sentencing table, then sentences on the other counts are imposed consecutively "but only to the extent necessary to produce a combined sentence equal to the total punishment" called for by the sentencing table. *Id.* § 5G1.2(d).[1] This can be accomplished either by imposing a consecutive sentence no longer than what is sufficient to make this sentence and the sentence on the most serious count equal to the intended aggregate punishment, *see United States v. Loeb,* 45 F.3d 719, 721 (2d Cir.1995) (11–month sentence imposed consecutively to five-year sentence to equal 71–month aggregate punishment), or by selecting an appro-

1. Before the Guidelines, sentencing judges in fact had the same option now specified in the Guidelines, *i.e.,* the option of running sentences on some counts consecutively *only to the extent necessary to achieve a desired aggregate sentence, see United States v. Watford,* 894 F.2d 665, 669–70 (4th Cir.1990) (implying availability of partial consecutive sentence as to pre-Guidelines count), but in practice sentences on individual counts were imposed either concurrently or consecutively, and were rarely apportioned so that only part of a sentence ran consecutively, as the Guidelines now direct. U.S.S.G. § 5G1.2(d).

priate punishment for counts other than the most serious count and running them consecutively only to the extent necessary to equal the intended aggregate punishment. The latter technique of partial consecutiveness avoids the risk of leaving in place a sentence less than what the sentencing judge intended in the event that the sentence on the most serious count is subsequently vacated.

Normally, it will be to a defendant's advantage to have multiple counts considered "closely related" and therefore placed within a single group for purposes of the multicount analysis. Such grouping avoids the incremental offense levels that are added to reflect additional groups. That advantage obtains, however, only if the offense level for a single group is less than the combined offense level that results from first calculating the offense levels for each offense separately and then calculating a combined offense level using the highest offense level for one offense and adding the incremental offense levels for the other offenses (*i.e.*, the other "groups").

In appellant's case, the presentence report recommended that Counts One through Five should be grouped pursuant to section 3D1.2(d). Subsection 3D1.2 permits grouping for counts that "involve substantially the same harm," and subparagraph 3D1.2(d) specifies that counts "involve substantially the same harm" when "the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." Contrary to normal expectations, the defendant objected to the recommended grouping and the prosecution favored it. The District Judge accepted the grouping recommendation upon a finding that the bank fraud and the arson were part of one continuous scheme. He thus drew the inference, fully available from the facts set forth in Mizrachi's presentence report, that the defendant had planned from the outset to borrow the money by fraud, buy the building, destroy it, collect the insurance, pay off the loan, and pocket the difference between the insurance proceeds and the loan.

■ On appeal, defendant's counsel initially renewed the claim that the fraud and arson counts should not have been grouped.

However, new appellate counsel, entering the case with leave to file an expanded reply brief, has now explicitly "withdrawn that argument," Expanded Reply Brief for Appellant at 10 n. 5, thereby accepting the grouping and adopting the position traditionally urged by defendants. We note that the abandonment of the grouping objection, which new counsel evidently believes operates to the defendant's advantage, is consistent with section 3D1.2(d). The offense behavior starting with the bank fraud and ending with the arson and the insurance fraud was "ongoing or continuous," and the offense guideline for arson "is written to cover such behavior" in that the guideline contemplates an arson "committed in connection with a scheme to defraud." U.S.S.G. § 2K1.4(a)(3).

Though accepting the fact of grouping, the appellant nonetheless objects to the manner in which the District Court calculated the offense level for the single group into which Counts One through Five were placed. The objection, stated variously in appellant's brief, is that the District Court "fail[ed] to apply ... adjustments prior to grouping all the counts," Expanded Reply Brief for Appellant at 10, and "erred at the least in applying [adjustments] to the case overall, rather than to particular counts," *id.* at 11. Phrased either way, the objection is without merit. The correctness of the District Court's methodology emerges upon examination of the various steps taken.

Having concluded that grouping of Counts One through Five was warranted under section 3D1.2(d), the step to which the defendant no longer objects, the Court correctly proceeded to determine the offense level for Count Two, the count charging arson. Section 3D1.3(b) instructs that where counts are grouped pursuant to section 3D1.2(d), as occurred in this case, and where different guidelines apply to the various counts, the offense level for the group is "the offense guideline that produces the highest offense level." Appellant does not dispute that in this case, that guideline is the guideline for arson, section 2K1.4.

■ The arson guideline instructs that the base offense level is determined by selecting

the highest level from among four choices. *Id.* § 2K1.4(a)(1)–(4). In appellant's case, the District Judge correctly chose subparagraph 2K1.4(a)(3), which applies if the arson offense "was committed in connection with a scheme to defraud." That subparagraph instructs that the base offense level is "2 plus the offense level from § 2F1.1 (Fraud and Deceit)." Applying this subparagraph, the District Judge turned to the cross-referenced section 2F1.1 and calculated the offense level for fraud. He started with the base offense level of 6, *id.* § 2F1.1(a), added 15 levels because the loss exceeded $10 million, *id.* § 2F1.1(b)(1)(P), added 2 levels for more than minimal planning, *id.* § 2F1.1(b)(2)(A), added 2 levels for risk of serious bodily injury, *id.* § 2F1.1(b)(4), and added 4 levels because the offense affected a financial institution and the defendant derived more than $1 million in gross receipts from the offense, *id.* § 2F1.1(b)(6)(B). That yielded an offense level for the fraud of 29. Continuing under the arson guideline, the Court then started with 2, as specified in section 2K1.4(a)(3), added 29 levels, the offense level from section 2F1.1, and then added 4 levels for the defendant's role in the offense as an organizer of a criminal activity that involved five or more participants or was otherwise extensive, *id.* § 3B1.1(a). Those additions yielded an arson offense level of 35.[2] Since there was only one group, 35 became the offense level for the group, and no increments were added for other groups. From this level of 35, the Court subtracted 3 levels for acceptance of responsibility, *id.* § 3E1.1, resulting in a final offense level of 32. From this level, the District Judge departed downward 4 levels, after the Government recommended a departure pursuant to section 5K1.1. The final offense level of 28 yielded a sentencing range of 78–97 months, and the Judge imposed a sentence of 78 months.

■ Appellant's challenges to the District Court's offense level computation are without merit. The Court did not fail to calculate the offense level for each count. The Court calculated the offense level for the arson count (Count Two), and, in doing so, correctly followed the cross-reference in section 2K1.4(a)(3), which directed the Court to section 2F1.1, the guideline for fraud. The offense level for fraud was calculated, not as the offense level for either of the mail fraud counts (Counts Three and Four), but only as a component of the offense level for arson.

■ Nor did the Court err in making the four-level adjustment for victimizing a financial institution and the four-level adjustment for role in the offense. Appellant's challenge to both adjustments proceeds from the premise that the arson fraud (*i.e.,* the fraud that triggers the cross-reference in the arson guideline to the fraud guideline) is only the fraud on the insurer of the building destroyed by arson. That premise is incorrect. By acknowledging that the counts charging the arson and the fraud against the bank that loaned the money to purchase the building were properly grouped as components of offense behavior that was "ongoing or continuous in nature," *id.* § 3D1.2(d), appellant has conceded that there was one "ongoing or continuous" fraud. Having obtained the benefit of considering the bank and insurance frauds as continuous for the purpose of grouping, appellant cannot demand that they be considered separately for the purpose of making adjustments. They are components of one offense behavior. The Commission has explicitly instructed that when counts are grouped pursuant to section 3D1.2(d), specific offense characteristics and adjustments from Chapter Three, Parts A, B, and C apply "based upon the combined offense behavior taken as a whole." *Id.* § 3D1.3, comment. (n. 3). The four-level adjustment for victimizing a financial institution was an offense characteristic required by the cross-referenced fraud guideline, section 2F1.1(b)(6), and the role in the offense adjustment was required by section 3B1.1(a) of Part B of Chapter Three, as applied to the defendant's continuous offense behavior. *See United States v. Eng,* 14 F.3d 165, 170–71 (2d Cir.1994) (stating that Application Note 3 to section 3D1.3 "means that courts should consider more than just a defendant's conduct on a particular count when applying Chapter Three,

---

2. The presentence report presented the components of the offense level in a different sequence, but the order of adjustments was without significance.

Parts A, B, and C adjustments"). The offense-level calculation was correct.

■ Appellant's remaining contentions require less discussion. First, though appellant had not seen his co-defendants' presentence reports, to which the District Judge referred, the reference occurred only in connection with the Court's decision to group Counts One through Five, a decision to which appellant no longer objects. Moreover, the District Court had already decided the grouping issue prior to referring to information in the reports. The reference to the presentence reports of the co-defendants was, at most, harmless error.

■ Second, the District Court properly determined that the loss from the arson for purposes of the cross-reference to section 2F1.1(b)(1) was an "intended loss" of $14,154,000.00. Appellant had insured the property for this amount on a replacement-cost basis, and the policy itself stated that, unless the insured indicated otherwise, in the event of a loss to real property, the company would pay whatever it cost to replace the property, limited only by the face amount of the policy. Mizrachi's insurance claim indicated that he was seeking replacement cost, and there was no evidence that he intended to settle his claim for less than the replacement cost.

■ Third, there was sufficient evidence to support the planning enhancement for the arson-related offenses. It is not disputed that the acts of Mizrachi's co-conspirators in planning and committing the arson constituted more than minimal planning, and it was certainly foreseeable to Mizrachi that more than minimal planning would occur in order to destroy such a sizeable property. U.S.S.G. § 1B1.3(a). Furthermore, Mizrachi himself was involved in more than minimal planning as to the arson. His conduct included insuring the property at replacement cost, hiring and paying accomplices, deciding the timing of the fire, and submitting the $14 million insurance claim. The Court's determination was not clearly erroneous.

■ Finally, because appellant failed to raise his restitution objection before the District Court, the claim will be reviewed only for plain error. Fed.R.Crim.P. 52(b).

No such error occurred. Although a court must consider factors like financial resources and the needs of dependents, specific findings as to each factor are not required. *United States v. Broyde*, 22 F.3d 441 (2d Cir.1994). In this case, the presentence report, which the Court considered, detailed Mizrachi's financial condition, his ability to pay, and the financial condition and needs of his dependents, and the Court expressly discussed these issues in the course of considering whether to impose a fine or costs of incarceration. Moreover, Mizrachi agreed to make full restitution in a written plea agreement. *See* 18 U.S.C. § 3663(a)(3) (authorizing court to order restitution "to the extent agreed to by the parties in a plea agreement"). The Court did not abuse its discretion in ordering Mizrachi to make full restitution.

The judgment of the District Court is affirmed.

Affirmed.