UNITED STATES of America, Plaintiff,

v.

Steven GOLINO, Defendant.

No. 95 CR 70 (JBW).

United States District Court,
E.D. New York.

Feb. 24, 1997.

Zachary Carter, United States Attorney, Brooklyn, NY by Michele L. Adelman, for U.S.

. Donna R. Newman, Jersey City, NJ, for Defendant.

MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge:

I Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .360

II Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .360

III Solving the Problem of Fixed Obligations and Unpredictable Asset and Income
    Fluctuation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .361
    A.  Porter Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .361
    B.  Problem of Potential Asset and Income Fluctuation . . . . . . . . . . . . . . . . . . . . . . . .361
    C.  Methods of Addressing Asset and Income Fluctuation . . . . . . . . . . . . . . . . . . . . . .362
        1.  Fixed Installments of a Fixed Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .362
        2.  Declining to Order Restitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .363
        3.  Probation Department to Ensure Good Faith Compliance . . . . . . . . . . . . . . . .364
        4.  Pre–Sentence Recommendation From Probation Department . . . . . . . . . . . . .364

5. Fixed Installment Schedule and Post–Sentence Modification . . . . . . . . . . . . . . 364
   a. 1996 Mandatory Victim Restitution Act Procedures . . . . . . . . . . . . . . . . . 365
   b. Application of 1996 Procedures to pre-Act Offenses . . . . . . . . . . . . . . . . . 366

IV  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 366

## I  Introduction

This cause for resentencing after remand from the court of appeals presents the vexing and heretofore largely unaddressed problem of balancing a defendant's obligation to pay restitution with existing and future obligations to pay child and other support, where it is not clear that the defendant will have, over the course of a restitution payment period, adequate earnings and assets to cover both obligations. The problem is how, given the likelihood of largely unpredictable changes in defendant's circumstances and fluctuation in earnings and assets, a sentencing court can reasonably protect the victims, the public, and defendant's family over the short and long term without abdicating its obligation to provide a fixed sentence and reasonable control during any supervised release or probationary period.

For the reasons stated below, defendant is ordered to pay restitution of $18,022.64 at the rate of $100 per week. Should this amount prove to be so burdensome as to limit defendant's ability to pay child support, the United States Attorney, defense counsel or the Probation Department may notify the court so that the order may be modified.

## II  Procedural History

Defendant, following a jury trial in which he was found guilty of two counts of unauthorized use of credit cards, 18 U.S.C. § 1029(a)(2), was sentenced to a prison term of fourteen months and a supervised release term of three years. The court, noting that defendant was "capable of earning money sufficient to make restitution," ordered defendant to pay $18,809.49 restitution in $100 weekly installments. Upon the government's showing that defendant owed his ex-wife over $23,000 in child support payments, the court noted that "a priority shall be given to payments due to his wife as support, and the $100 is only payable after that, if he has enough assets."

At a later hearing the court adjusted the restitution amount to $18,022.64—$11,338.01 to AT&T and $6,484.63 to Signet Bank, the two victims. The court's written judgment, dated April 3, 1996, states: "Restitution is payable upon defendant's release from prison as set by the Probation Department at no more than $100.00 per week. Priority is to be given to child support payments to the defendant's ex-wife." It was the court's view that the Probation Department would be in the best position to monitor fluctuations in defendant's ability to meet these two obligations and to ensure that if the burdens were to become too onerous the child support payments would be given priority and the restitution installment payments adjusted.

Defendant appealed the imposition of restitution, arguing that the court (1) abused its discretion by ordering the payment of restitution, and (2) improperly delegated to the Probation Department the task of setting the amount and timing of payments.

The court of appeals affirmed the restitution order, *United States v. Golino,* slip op. at 3 (2d Cir., Dec. 18, 1996), but found that the sentencing court's written judgment impermissibly delegated to the Probation Department authority to determine the amount of the weekly restitution payments. *See also, United States v. Porter,* 41 F.3d 68, 71 (2d Cir.1994) (sentencing judge may not authorize a probation officer to "make post-sentencing decisions as to either the amount of restitution . . . or scheduling of installment payments"); *but cf. United States v. Lilly,* 80 F.3d 24, 29 (1st Cir.1996) (contra). It remanded the case for resentencing "in a manner that does not authorize a probation officer to make post-sentencing decisions about the amount of restitution or the scheduling of payments." *United States v. Golino,* slip op. at 3.

## III  Solving the Problem of Fixed Obligations and Unpredictable Asset and Income Fluctuation

### A.  *Porter* Rule

*United States v. Porter* stands for the proposition that the often detailed calculations involved in ordering restitution, such as the responsibility for determining installment payments and setting the schedule for payments pursuant to section 3663(f) of Title 18 of United States Code, are inherently judicial functions that cannot be delegated by the sentencing court. *Porter*, 41 F.3d 68, 71 (2d Cir.1994) (no delegation to the Probation Department); *United States v. Mortimer*, 94 F.3d 89, 90 (2d Cir.1996) (no delegation to the Bureau of Prisons' Inmate Financial Responsibility Program); *see also*, *United States v. Kassar*, 47 F.3d 562, 568 (2d Cir. 1995) (*Porter* rule applies to fines; court may not delegate to Probation Department the determination of the schedule of installment payments for a fine). The majority of circuits that have considered this issue agree. *See, e.g.*, *United States v. Graham*, 72 F.3d 352, 357 (3d Cir.1995), *cert. denied*, — U.S. ——, 116 S.Ct. 1286, 134 L.Ed.2d 230 (1996); *United States v. Johnson*, 48 F.3d 806, 808–09 (4th Cir.1995); *United States v. Albro*, 32 F.3d 173 (5th Cir.1994); *United States v. Gio*, 7 F.3d 1279 (7th Cir.1993); *cf. Dougherty v. White*, 689 F.2d 142, 145 n. 1 (8th Cir.1982) ("better practice" for sentencing court to set amount of restitution); *but see United States v. Barany*, 884 F.2d 1255, 1260 (9th Cir.1989) (court must fix the maximum amount, but may delegate to the probation officer issues of timing and manner of payment), *cert. denied*, 493 U.S. 1034, 110 S.Ct. 755, 107 L.Ed.2d 771 (1990).

The appropriate practice has not been fully defined. In at least one instance after *Porter*, for example, the court of appeals affirmed a restitution order that appeared to involve some delegation to the Probation Department. *See United States v. Giwah*, 84 F.3d 109, 115 (2d Cir.1996) (leaving undisturbed court's order that defendant pay $79,000 restitution at a rate of "at least" 15% of defendant's annual gross income).

■ *Porter* and like cases are based on the principle that Article III of the United States Constitution imposes limitations on the duties that a court may delegate to nonjudicial officers. *See United States v. Johnson*, 48 F.3d 806, 808–09 (4th Cir.1995). Sections 3663 and 3664 of Title 18 impose upon the sentencing court the responsibility to set the terms of restitution. *See, e.g.*, 18 U.S.C. § 3663(f) ("The *court* may require that such defendant make restitution under this section within a specified period or in specified installments") (emphasis added). Although probation officers are appointed by and serve the district court and are required to perform a number of duties in the court's service, including "perform[ing] any other duty that the court may designate," *see* 18 U.S.C. § 3603(9), section 3663's grant of authority to the court to set the terms of restitution must be read as exclusive. The Probation Department may not perform this duty. The imposition of sentence is a core judicial function, and determination of the timing and schedule of restitution installment payments is not the type of duty that may be delegated. *See Ex parte United States*, 242 U.S. 27, 41, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916) (imposition of punishment is a judicial function); *Whitehead v. United States*, 155 F.2d 460, 462 (6th Cir.) ("Fixing the terms and conditions of probation is a judicial act which may not be delegated"), *cert. denied*, 329 U.S. 747, 67 S.Ct. 66, 91 L.Ed. 644 (1946).

This is a sound legal conclusion. Yet, it poses a number of practical difficulties, which are outlined and dealt with below.

### B.  Problem of Potential Asset and Income Fluctuation

Frequently, at the time of sentencing, a defendant is without sufficient assets to pay restitution in a lump sum. Recognizing this, as well as the fact that a defendant's indigence may be temporary and that he or she may have the capacity to earn money in the future, Congress enacted subsection 3663(f) of Title 18, enabling a court to order restitution payment in installments. The statute did not solve the problem of forecasting a defendant's ability to pay. There remains the issue of how to accommodate likely shifts

over the installment period in a defendant's ability to pay as a result of changes in life circumstances, from promotions and demotions, to rent increases, lottery winnings, book royalties, unexpected medical expenses, and other unpredictable and sometimes quotidian events. Such shifts in income and expenses reverberate beyond encumbering a defendant's ability to pay restitution. They may impede his or her ability to comply with child and spousal support obligations.

By ordering the defendant in the instant case to pay restitution of "no more than $100 per week" the court was attempting to fashion an installment plan that would allow responsiveness to unpredictable changes in defendant's income without jeopardizing child support obligations, since it is desirable, when sentencing, to avoid unnecessarily harming innocent family members. *See United States v. Rose,* 885 F.Supp. 62, 63 (E.D.N.Y.1995); U.S.S.G. § 5H1.6 (family ties and responsibilities may be relevant in determining amount of restitution or fine). Were the defendant to suffer a reduction in income that made it impossible for him to simultaneously pay both child support and restitution, the court's original plan would have given the Probation Department the latitude to make an adjustment to protect the family, reducing the weekly restitution payment to a figure below $100 per week, while keeping the child support obligation intact. Were the defendant's salary thereafter to increase, the Probation Department could restore the restitution payments to $100 per week.

By foreclosing this approach, *Porter* rejects what is probably the most efficacious and flexible solution to situations like the instant one. It leaves the sentencing court with a number of options, none of which are problem-free. Alternative methods of dealing with the situation under *Porter* are outlined below:

### C. Methods of Addressing Asset and Income Fluctuation

#### 1. Fixed Installments of a Fixed Amount

The first possibility in the wake of *Porter* is that the court, in establishing a fixed installment plan, does nothing to protect the defendant's family in the event of income fluctuation. It must, in the words of the court of appeals, "set the amount of [the weekly] payments and ask the probation office to supervise [defendant's] compliance with their terms." *United States v. Golino,* slip op. at 4 (2d Cir. Dec. 18, 1996). If a defendant's financial situation were to deteriorate to the extent that both obligations could not be met, and if the defendant were to be forced to default on his restitution payments, he would risk of revocation of probation, 18 U.S.C. § 3663(g), loss of federal benefits, 18 U.S.C. § 3663(I)(1), or imposition of a lien, 18 U.S.C. §§ 3612–13.

Stranded between the Scylla and Charybdis of conflicting obligations, a defendant, given the severe consequences of failing to pay restitution, would likely choose to do the less financially painful thing: subordinate his child support payments, taking his chances that his family and dependents would not hold him to his obligation, or that they would lack the resources to do so. A defendant also could proceed legally, moving the court with jurisdiction over the support order to modify it. Whatever the route taken, the choice would deprive his dependents of essential support while the matter was resolved, and would burden them with attempting to enforce the support order. Moreover it is by no means clear that the family court could provide protection to the family. *See* Carol Sanger, Separating From Children, 96 Colum.L.Rev. 375, 427 (1996) ("In most states child support obligations are suspended if the obligated parent becomes 'involuntarily impoverished'"); *Knights v. Knights,* 127 A.D.2d 905, 512 N.Y.S.2d 261 (3d Dept. 1987) (denial of application to modify support order on grounds that father was incarcerated and financially unable to comply was not an abuse of discretion), *affirmed,* 71 N.Y.2d 865, 527 N.Y.S.2d 748, 522 N.E.2d 1045 (1988); *but see, Wills v. Jones,* 102 Md.App. 539, 650 A.2d 736, 742 (1994) (suspension of payment of child support during period of obligor's incarceration warranted), *vacated,* 340 Md. 480, 667 A.2d 331 (1995); *Voecks v. Voecks,* 171 Wis.2d 184, 491 N.W.2d 107, 109

(1992) (same); N.Y.Dom.Rel.Law § 240 (McKinney 1996 Supp.) (substantial change in circumstances must be shown to justify modification of maintenance provision); *cf. Morrow v. Morrow,* 62 A.D.2d 1142, 404 N.Y.S.2d 766 (4th Dept.1978) (grant of downward modification of child support where ex-husband needed to clear mortgage arrearage).

A blunt and rigid approach is undesirably harsh and in derogation of the sentencing court's continuing duty to evaluate the defendant's family and community ties and responsibilities, and to protect the public interest. *See, e.g.,* 28 U.S.C. § 994(d) (family ties may be considered with respect to "the nature, extent, place of service, or other incidents of an appropriate sentence"); 18 U.S.C. § 3553. The sentencing court must guard against the possibility of wreaking undue depredations upon the defendant's innocent family. *United States v. Johnson,* 964 F.2d 124, 128–29 (2d Cir.1992) (extraordinary family circumstances are a valid reason for a downward departure; "we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing"); *United States v. Rose,* 885 F.Supp. 62, 63 (E.D.N.Y.1995); *see also* Eleanor Bush, Considering the Defendant's Children at Sentencing, 2 Fed.Sent.Rep. 194 (1989) (describing desire not to harm innocent parties as "implicit" universal sentencing consideration); Kathleen Daly, Gender, Crime, and Punishment 9–10 (1994) (noting concern of court officials to refrain from punishing "innocent children"); *see generally,* The Effect of Sentencing on Women, Men, the Family, and the Community, 5 Colum.J.Gender & L. 169 (1996). To fulfill its protective role, the sentencing court must, therefore, consider the ill-effect of potentially depriving a family of financial support:

> Beyond the love and affection parental care provides, children need financial support. Judges should evaluate whether sufficient financial support will be available ... Removing the primary economic support of a child might jeopardize the child's physical and mental health.

Tracy Tyson, Downward Departures Under the Federal Sentencing Guidelines: Are Parenthood and Pregnancy Appropriate Sentencing Considerations? 2 S.Cal.Rev.L. & Women's Stud. 577, 603 (1993). While concerns about protection of the family have been raised mainly in the context of debate over the Sentencing Guidelines and the effect of imprisonment of the defendant on the family, they are of no less import where imprisonment is not a consideration. The potential financial impact of a sentence on the family must bear on a court's decisions regarding the terms of restitution, fines and other non-incarceratory sanctions. U.S.S.G. § 5H1.6.

The sentencing court also must protect the public's significant and legitimate interests. Any unnecessary rigidity similarly limits the court's latitude in considering the public's interests in child support obligations being met: family and community stability is encouraged, fewer young people are likely to be driven to crime as a result of broken and impoverished homes, and the government's fisc is not overburdened by providing aid to families that can be supported by other family members. Congress has long acknowledged these concerns and enacted legislation to aid and encourage states in the collection of child support. *See, e.g.,* Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Title II, Pub.L. No. 104–193, §§ 301–375, 110 STAT. 2106 (overhauls federal and state child support systems, requiring use of new enforcement techniques to find noncustodial parents); Child Support Recovery Act of 1992, Pub.L. No. 102–521, 106 STAT. 3403 (codified at 18 U.S.C. § 228) (makes it a crime to willfully avoid a past due child support obligation while residing in different state from child); Social Service Amendments of 1974, Pub.L. No. 93–647, § 451, 88 STAT. 2337 (creating Title IV–D of Social Security Act; states must provide child support enforcement services free of charge to AFDC recipients).

## 2. Declining to Order Restitution

The second alternative the court might consider is to decline to order restitution where a defendant has an outstanding obligation to pay child support and there is doubt about his future ability to discharge both debts. This approach would ignore

Congress' stated objective that the "wrongdoer make [good], to the degree possible, the harm he has caused the victim." Victim and Witness Protection Act of 1982, Pub.L. 97–291, 1982 U.S.Code Cong. & Admin.News 2515, 2536; *see also* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, § 201 et seq., 110 STAT. 1214; *United States v. Ferranti*, 928 F.Supp. 206, 217–219, 220–221 (E.D.N.Y.1996) (history of restitution, and its increasing acceptance in the United States); U.S.S.G. § 5E1.1(a) ("The court *shall*—(1) enter a restitution order if such an order is authorized under 18 U.S.C. §§ 3663–3664 . . .") (emphasis added).

### 3. Probation Department to Ensure Good Faith Compliance

A third option is to set a fixed installment schedule and enlist the Probation Department's services "to ensure good faith compliance." *United States v. Lilly*, 80 F.3d 24, 29 (1st Cir.1996). Under this approach, the Probation Department could reduce a defendant's restitution installment amount in order to preserve a defendant's ability to pay child support as within the bounds of "good faith compliance." While this route is an improvement over the above two in that allows a balancing of the shifting interests rather than categorical exclusion of one, it merely winks and nods at the court of appeals' holding in *Porter*, circumventing it in the end. That the court of appeals would approve such a process is doubtful, since it effectively gives the Probation Department the same sort of nondelegable decision-making power prohibited by *Porter*, but within the narrower confines of "ensur[ing] good faith compliance."

### 4. Pre–Sentence Recommendation From Probation Department

A fourth option would be to request, prior to sentencing, that the Probation Department make a recommendation to the court regarding the need for an installment plan, its timing and its schedule. *See e.g., United States v. Miller*, 77 F.3d 71, 77 (4th Cir.1996). Enlisting the support of the Probation Department in this way would provide the same benefit of reducing workload and improving

efficiency as the pre-*Porter* practice. It would not run afoul of *Porter* since the Probation Department's recommendation would be just a suggestion, subject to the court's ultimate approval and authority. *See, e.g. United States v. Raddatz*, 447 U.S. 667, 683, 100 S.Ct. 2406, 2416, 65 L.Ed.2d 424 (1980) (delegation in Federal Magistrate Act does not violate Article III where ultimate decision is made by the district court). This technique is beneficial, but does not solve the problem. The court would still be bound to establish a fixed plan based on the Probation Department's recommendation, leaving the conundrum that the instant case presents—unpredictable changes in income and assets—unaddressed. It is no more likely that the Probation Department has a crystal ball than it is that the court does.

### 5. Fixed Installment Schedule and Post–Sentence Modification

A final option is that the court establish a fixed installment schedule, but retain the power to modify it. The court would request that the Probation Department, United States Attorney, defendant, or restitutee notify the court of the need for temporary or permanent modification of the installment schedule should defendant's economic circumstances change after imposition of sentence. The child or family support obligee would be instructed to advise the Probation Department or the United States Attorney if defendant's support obligations were not being met; the Probation Department, the United States Attorney or defense counsel would notify the court. The judgment should, under this alternative, specify that the installment plan is subject to modification. A stipulation from the government, defendant and restitutee of the right to modify is probably not required, but would be useful as a notice device. Should the court determine that a hearing on modification is necessary, it would need to provide notice to defendant, the defendant's family, the government and the restitutees.

This procedure would have the distinct disadvantage of being burdensome to the sentencing court. Its administration would likely perpetuate the court's involvement in

cases long after the sentence has been imposed and the case put out of mind. Such continuing micro-management is not desirable. Nor is there language in unamended sections 3663 and 3664 of Title 18—the applicable sections on restitution—that directs a court to proceed in this manner after sentencing. Yet, in spite of this silence and the attendant burdens already noted, other statutory provisions support the conclusion that Congress did not intend that restitution installment plans be so rigid that they might result in depriving a family or child of the support owed by a defendant. Provisions relating to restitution for crimes of sexual abuse and telemarketing fraud, for instance, indicate that post-sentence modification of the restitution order is an appropriate means to avoid this consequence. *See* 18 U.S.C. §§ 2248(d), 2327(d) ("[a] victim or the offender may petition the court at any time to modify a restitution order as appropriate in view of a change in the economic circumstances of the offender"). The new mandatory restitution provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") support the same conclusion.

### a. 1996 Mandatory Victim Restitution Act Procedures

The 1996 Mandatory Victim Restitution Act, although not applicable to defendant's conviction, which occurred before AEDPA's enactment, *see* Pub.L. No. 104–132, § 211, 110 STAT. 1241 (amendments effective for sentencing proceedings in cases in which the defendant is convicted on or after date of enactment, April 24, 1996), provides a particularly instructive framework, filling in some of the gaps left by *Porter.* Its requires that defendants convicted of certain crimes—including crimes of violence, felony crimes against property, and product tampering—pay "full restitution" to identifiable victims. *See* AEDPA, Pub.L. No. 104–132, § 204(c)(1)(A), 110 STAT. 1229 (codified at 18 U.S.C. § 3663A(c)(1)(A)). While primarily intended to make the federal criminal justice system more victim-centered, a subsidiary goal of the new provisions was to establish a uniform procedure for restitution orders and to improve collection and enforcement. *See*

S.Rep. No. 104–179, at 13, *reprinted in* 1996 U.S.Code Cong. & Admin.News 924, 926.

Congress envisioned a flexible system that would enable a court to order restitution by a defendant such as Golino while insulating from adverse affect his obligation to pay child support. Amended section 3664 mandates that the sentencing court consider the defendant's financial resources, assets, projected earnings and income, and financial obligations, "including obligations to dependents," when determining and specifying the manner in which, and schedule according to which, restitution is to be paid. AEDPA, Pub.L. No. 104–132, § 206(f)(2), 110 STAT. 1234 (codified at 18 U.S.C. § 3664(f)(2)). Prior to sentencing, the defendant is required to file an affidavit with the probation officer detailing this information. Pub.L. No. 104–132, § 206(d)(3) (codified at 18 U.S.C. § 3664(d)(3)). After consideration of the subsection 3664(f)(2) factors, the court may order the defendant to pay restitution in a single lump-sum, at specified intervals or in-kind payments. Pub.L. No. 104–132, § 206(f)(3)(A) (codified at 18 U.S.C. § 3664(f)(3)(A)). In addition, the statute does not require the court to order full restitution where it finds that the defendant is financially incapable of making payment:

a restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of the restitution order in the foreseeable future under any reasonable schedule of payments.

Pub.L. No. 104–132, § 206(f)(3)(B) (codified at 18 U.S.C. § 3664(f)(3)(B)).

Amended section 3664 also indicates that the sentencing court should maintain continued involvement and oversight of a restitution order. *See also* AEDPA, Pub.L. No. 104–132, § 207, 110 STAT. 1239 (codified at 18 U.S.C. § 3613A) (providing for hearing on delinquency or default). The court must be notified in the event of a change in the defendant's ability to pay, and it retains the ability to subsequently adjust the payment

schedule. Section 3664 reads, in relevant part:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim.... Upon receipt of the notification, the court may, on its own motion, or motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

*See* Pub.L. No. 104–132, § 206(k) (codified at 18 U.S.C. § 3664(k) (1996); *see also*, Pub.L. No. 104–132, § 207(b)(3) (codified at 18 U.S.C. § 3572(d)(3)) (same, as applied to fines).

Congress recognized that "the need for finality and certainty in the sentencing process" requires that determination of the amount and terms of restitution "be made quickly, but also recognize[d] that justice requires that this particular aspect of the criminal sentence[, restitution,] be subject to review in light of changed circumstances." *See* S.Rep. No. 104–179, at 20, *reprinted in* 1996 U.S.Code Cong. & Admin.News 924, 933. Thus,

> should the defendant's economic circumstances change to allow greater restitution payments, these payments should be required. Similarly, if the defendant's economic circumstances change so that the defendant's ability to pay is impaired, the court may adjust the payments accordingly without discharging the defendant's obligation to pay full restitution.

*See* S.Rep. No. 104–179, at 21, *reprinted in* 1996 U.S.Code Cong. & Admin.News 924, 934; *see also*, Pub.L. No. 104–132, § 206(*o*) (codified at 18 U.S.C. §§ 3664(*o*)) (1996) (finality of judgment notwithstanding fact that imposition of restitution can be amended or adjusted); 18 U.S.C. § 3572(c) (same; fines); *United States v. DiFrancesco*, 449 U.S. 117, 139, 101 S.Ct. 426, 438–39, 66 L.Ed.2d 328 (1980) (sentence already being served may be enhanced without offending the Double Jeopardy Clause where defendant has no legitimate expectation of finality in the original sentence).

### b. Application of 1996 Procedures to pre-Act Offenses

■ In view of the unamended restitution provisions' silence as to what recourse the court has to ensure that defendant's restitution obligation does not in the future impede his ability to pay child support, and the absence of any authority to the contrary, the court adopts the sensible procedure established by Congress in the MVRA and sections 2248(d) and 2327(d) of Title 18 as applicable to defendant's pre-Act offense. *See United States v. Porter*, 41 F.3d 68, 71 (2d Cir.1994) (leaving to the district court the question of whether sections 2248 and 2327 can be applied to non-section 2248 and 2327 crimes either by reference to the statutory terms or by incorporation of similar terms in the restitution order).

### IV Conclusion

Defendant is ordered to pay restitution of $18,022.64 in installments at the rate of $100 per week, divided between restitutees proportionately to the relative debts. The installment plan is subject to modification. The parties have stipulated in open court at time of sentence that such continuing power to modify the restitution order exists.

The Probation Department is directed to monitor defendant's compliance with his child support obligation and to notify the court if defendant, his ex-wife, or a restitutee informs it that defendant cannot meet or has not met both obligations. The United States Attorney, restitutees, the family representative and defense counsel may stipulate, subject to the court's approval, to a modification. In the absence of a stipulation, the court will conduct a hearing to consider modification. Notice of the stipulation or hearing shall be sent to defendant, the defendant's family representative, the government and the restitutees. Notice to the restitutees is required since they may have forgone a civil remedy in lieu of restitution.

Defendant was released from prison on January 31, 1997. Restitution installment payments are to begin one year from that date. He is presently without a job and has considerable support and credit card debts. In view of defendant's reduced economic circumstances, no interest on the restitution debt shall be charged. The Probation Department shall assist defendant in obtaining a job, promptly beginning to undertake his family support obligations, and reducing his debts.

SO ORDERED.