**Jabari ZAKIYA, Petitioner,**

v.

**Janet RENO, U.S. Attorney General, Kathleen Hawk, Director, U.S. Bureau of Prisons, Respondents.**

No. Civ.A. 98–1516–AM.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 4, 1999.

Mary E. Blevins–Cox, Washington, DC, Thomas Ruffin, Jr., Washington, DC, for plaintiff.

Jeri K. Somers, Asst. U.S. Atty., U.S. Attorney's Office, Alexandria, VA, for defendants.

### MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is petitioner's Third Amended Petition for Writ of Mandamus and Habeas Corpus. Petitioner's motion presents the novel question of whether, under 18 U.S.C.A. § 3624(e) (Supp.1999), the Bureau of Prisons may continue the incarceration of a person who has served his entire sentence but who has failed to sign paperwork regarding a payment schedule for his criminal fine.

### FACTUAL BACKGROUND

On February 18, 1994, following his federal convictions for tax evasion[1] and failure to file income tax returns,[2] petitioner Douglas W. Ross a/k/a Jabari Zakiya (Zakiya) was sentenced in the United States District Court for the District of Maryland

---

1. 26 U.S.C.A. § 7201 (1989).

2. 26 U.S.C.A. § 7203 (Supp.1999).

to a sixteen-month term of imprisonment, a $25,000.00 fine, three years of supervised release, and a $200.00 special assessment. Zakiya self-reported to FCI Morgantown, located in West Virginia, to begin his sentence on January 5, 1995. His sixteen-month sentence should have ended on May 5, 1996. It is undisputed that, pursuant to calculations under 18 U.S.C.A. § 3624(a) and (b), Zakiya's administrative release date with full good-time credit was February 29, 1996. *See* Resp.Ex. 1, Decl. of Aaron Nixon, Jr., Acting Inmate Systems Manager, FCI Petersburg, VA.

On July 26, 1995, as part of their standard pre-release procedure, prison officials presented Zakiya with a form captioned, "Installment Schedule Agreement for Unpaid Fines" ("Agreement"), *see* Resp.Ex. 1, Att. 4, which states:

> I agree to pay, while under supervised release, the remaining balance on any fine relative to the offense under which I am committed.... I also understand that failure to agree to adhere to this installment schedule may delay or prevent my release from incarceration.

Zakiya refused to sign the Agreement, and has repeatedly refused to sign the Agreement since then.

Zakiya, who is a former employee of the National Aeronautics and Space Administration (NASA), considers himself a "political prisoner." He believes that the tax laws of the United States "lack[ ] legitimacy," *see* Petit. 3rd Amended Petition at ¶ 41, and he has "urged black people of African descent (including those in what was called the 'Progressive African Liberation Movement') to organize against federal tax policies, which, in his belief financed the racist and class-bigoted oppression of the poor and of people of color in the United States." *Id.* at ¶ 6. According to his attorney, Zakiya's unwillingness to sign the Agreement is motivated by the same attitudes about the government's authority to collect money from him.

Because he has refused to sign the Agreement, the Bureau of Prisons (BOP) has not released Zakiya from custody.

*See* Resp.Br. at 2. On March 8, 1998, Zakiya was transferred to FCI Petersburg, located within the Eastern District of Virginia, where Zakiya remains confined pursuant to 18 U.S.C.A. § 3624(e). He has now remained in custody for three years longer than the sentence imposed on him, and in another eight months, his incarceration will exceed the statutory maximum for the offenses for which he was convicted.

Section 3624(e) provides that:

> No prisoner shall be released on supervision unless such prisoner agrees to adhere to an installment schedule, not to exceed two years except in special circumstances, to pay for any fine imposed for the offense committed by such prisoner.

Based on this statutory mandate, the BOP explained its policy as follows:

> In accord with 18 U.S.C. section 3624(e), any inmate who has a term of supervised release and a fine relative to the offense under which he or she was committed, *must* agree to adhere to an installment schedule to pay any remaining balance on this fine while under release supervision. Any inmate who refuses to comply with Section 3624(e) must remain in the custody of the Bureau of Prisons.

Bureau of Prisons Program Statement 5380.05, Sec. 5.a.(5), *Financial Responsibility Program, Inmate* (December 22, 1995), *cited in Ross v. Thompson,* 927 F.Supp. 956, 957–58 (N.D.W.Va.1996) (emphasis in original). The BOP directs that:

> The prisoner shall not be released on supervision and shall remain confined unless the prisoner pays the fine in full, has executed an installment schedule approved by the court, or agrees to adhere to an installment schedule.... Every effort possible should be undertaken to assure that the prisoner is not confined past the release date any longer than necessary.

Bureau of Prisons Program Statement No. 5880.28, *Sentence Computation Manual*

*(CCCA of 1984)* (February 21, 1993), *cited in Ross,* 927 F.Supp. at 958.

According to the respondents, "Zakiya can be released from FCI Petersburg ... to supervised release at any time he chooses by contacting his unit case manager or Inmate Systems Management staff and signing the Agreement." Resp.Br. at 2. While this statement is certainly correct, the issue before us is whether the BOP has the authority, in the face of such irrational recalcitrance by a prisoner, to extend an inmate's sentence indefinitely. Before we can address the merits of this case, we must first address its tortured procedural history.

## PROCEDURAL BACKGROUND

### Litigation # 1

On March 25, 1996, after his administrative release date had passed but while the full sentence had not been served, Zakiya, who was then housed in an FCI in that district, filed his first *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C.A. § 2241 (Supp.1994) in the United States District Court for the Northern District of West Virginia. *See Ross,* 927 F.Supp. at 957; Resp.Ex. 3, Petition for Writ of Habeas Corpus. On May 1, 1996, the district court held that Zakiya's case was governed by the clear language of § 3624(e), and that he could not be released until he signed the Agreement. *See Ross,* 927 F.Supp. at 958. On June 4, 1996, Zakiya appealed that decision to the Fourth Circuit. *See* Resp.Ex. 4, Informal Brief. Neither court addressed the issue of whether the BOP could hold Zakiya past May 5, 1996.

According to respondents, while Zakiya's first appeal was pending, he filed an-other informal *pro se* petition for writ of habeas corpus in the Northern District of West Virginia. *See* Resp.Br. at 8. On November 22, 1996, that petition was dismissed without prejudice on the grounds that § 2244(a) prohibits successive habeas filings without authorization by the court of appeals. *See id.*[3] On December 20, 1996, Zakiya filed an application to file a successive petition with the Fourth Circuit, docketed as Appeal 96–670. On January 14, 1997, the Fourth Circuit, citing § 2444, denied Zakiya's application to file a successive petition. *See* Resp.Ex. 7, *In Re: Zakiya,* No. 96–670, Order (4th Cir. Jan. 14, 1997). On the same day, the Fourth Circuit affirmed the district court's opinion in *Ross v. Thompson,* 927 F.Supp. 956 (N.D.W.Va.1996) by denying Zakiya relief under § 2241 and finding no reversible error. *See Zakiya v. Thompson,* 129 F.3d 118, 1997 WL 693563 (4th Cir.1997) (unpublished) (per curiam).

### Litigation # 2

On January 8, 1997, while the litigation in West Virginia was proceeding, Zakiya filed another habeas petition pursuant to § 2241 in the district court for the District of Columbia. *See* Resp.Br. at 9. The district court ordered the case transferred to the Northern District of West Virginia, where Zakiya was confined.[4] Thus, the case was transferred to the Northern District of West Virginia, where the case was docketed as CA–1:98–CV–27. On February 11, 1998, the district court ordered petitioner to show cause why his petition should not be dismissed because the court had already ruled adversely on the matter. *See* Resp.Br. at 9–10. Before he could respond, Zakiya was transferred to FCI Petersburg, within the Eastern District of

---

3. During this time, Zakiya also filed a motion to reconsider the district court's dismissal of his § 2241 petition and denial of his motion to recuse. The district court denied that motion, and the Fourth Circuit affirmed the district court and dismissed Zakiya's appeal. *See Zakiya v. Thompson,* 129 F.3d 118, 1997 WL 693563 (4th Cir. Oct. 28, 1997) (unpublished) (per curiam); Resp.Ex. 8.; Resp.Br. at 9.

4. Zakiya appealed the transfer order by asking the court of appeals to issue a writ of mandamus, a request that the D.C. Circuit denied. *See In re Jabari Zakiya a/k/a/ Douglas Ross,* 1998 WL 796144 (D.C.Cir. Oct. 6, 1998).

Virginia. Thus, on March 13, 1998, Zakiya filed a motion to transfer the case to this Court, and that motion was granted on March 18, 1998.

On April 21, 1998, without considering the merits of his claim, we ordered that Zakiya's petition be dismissed as a successive petition pursuant to § 2244(a). *See Zakiya v. Hawk,* Civil A. No. 98–468, Order (E.D.Va. April 21, 1998). Zakiya's motion to reconsider was denied on May 28, 1998. *See Zakiya v. Hawk,* Civil A. No. 98–468, Order (E.D.Va. May 28, 1998). On March 25, 1999, the Fourth Circuit summarily affirmed our denial of Zakiya's motion to reconsider. *See Zakiya v. Hawk,* 1999 WL 162984 (4th Cir. Mar. 25, 1999). None of these opinions addressed the issue of whether the BOP could continue to hold Zakiya past the expiration of his judicially imposed sentence.

### Litigation # 3

Parallel to the District of Columbia habeas litigation, which had been transferred to our district, Zakiya filed a petition for a writ of mandamus in the D.C. district court on June 27, 1997. On May 18, 1998, now with the assistance of counsel, Zakiya filed an Amended Petition for a Writ of Mandamus and a Second Amended Petition for a Writ of Mandamus. On July 7, 1998, those petitions were transferred to this court.

Despite these various lawsuits and court decisions, no court has ever addressed the merits of Zakiya's claim in the posture the case finds itself in today. When the district court in the Northern District of West Virginia issued its opinion in this case, it did so before May 5, 1996. *See Ross,* 927 F.Supp. at 956 (opinion published on May 1, 1996). In fact, the district court simply quoted § 3624(e) and concluded that the BOP had authority to continue holding Zakiya, past what was at that point his administrative release date. The district court did not consider whether § 3624(e) authorized the BOP to hold Zakiya past May 5, 1996, the release date ordered by the sentencing court. Thus, we find that Zakiya's claim presents this Court with an issue that has not been directly addressed.[5]

### ANALYSIS

### I. Jurisdiction

Zakiya's petition asks the Court to grant a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[6] The thrust of respondents' argument is that this Court lacks jurisdiction to entertain Zakiya's petitions because 28 U.S.C. § 2244 (Supp.1999) and § 2255 (Supp.1999) operate in concert to bar successive habeas corpus petitions by federal prisoners. Section 2255, as amended by the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), requires that "second or successive motion[s] must be certified" by an appellate court panel to contain newly discovered evidence that would establish by clear and convincing evidence that no trier of

---

**5.** On January 22, 1999, Zakiya filed a Third Amended Petition for Writ of Mandamus and Habeas Corpus, in which he prays for relief under 28 U.S.C.A § 1361 (1993) (mandamus), 28 U.S.C.A. § 1651 (1994) (the All Writs Act), and 28 U.S.C.A. § 2241 (habeas corpus). Because all of these petitions deal with the same core issue to which the respondents have fully replied, we will treat all these pleadings together, and refer to them simply as Zakiya's petition.

**6.** Petitioner also argues that he is being imprisoned in violation of 18 U.S.C.A. § 3614(c) (Supp.1999), which states: "In no event shall a defendant be incarcerated under this section solely on the basis of inability to make payments because the defendant is indigent." As an initial matter, we have serious doubts that Zakiya is indigent. The record before us indicates that he was an engineer at NASA before his convictions, and he has retained counsel. Even if he were indigent, Zakiya is not being incarcerated for that reason; he is being incarcerated because of his refusal to sign the Agreement.

Zakiya also urges the Court to use its authority under § 1361 (mandamus) and § 1651 (the All Writs Act) to order the BOP to release him from custody. We need not consider whether we may use that authority here because we find that petitioner's § 2241 argument adequately resolves this civil action.

fact could find the defendant guilty, or a new rule of constitutional law made retroactive by the Supreme Court. According to respondents, "[s]ection 2244(b)(1) mandates that a second or successive [§ 2255] petition which presents a claim already presented in another application shall be dismissed." Resp.Br. at 6. Furthermore, respondents argue, Zakiya has not certified his § 2255 petition to the Fourth Circuit in accordance with § 2244(b)(3)(A).

■ Respondents are correct that the recently enacted amendments to § 2255 severely curtail successive petitions for federal prisoners by requiring certification from the court of appeals. However, respondents, as did this Court when we considered Zakiya's first petition, miss the mark entirely because Zakiya's petitions were not brought under § 2255, but rather under § 2241, and therefore, any bar on successive § 2255 petitions does not govern. Even a cursory review of the applicable law reveals that Zakiya's claims in no way rely on § 2255. *See Ross v. Thompson,* 927 F.Supp. 956, 957 (N.D.W.Va.1996) (stating that Zakiya's first habeas petition was filed pursuant to § 2241); Petit.Br. at 1 (habeas petition "grounded upon" § 2241).

Section 2255 provides:

[Prisoners] claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Zakiya makes no such claims. First, he is not collaterally attacking his sentence. In fact, he has already served his sentence. His quarrel is not with the sentence imposed, but rather with the requirement that he sign the BOP's Agreement. He makes absolutely no argument that his conviction or sentence were tainted by an incorrect application of federal or constitutional law. Second, he is not directing his petition at "the court which imposed the sentence," but rather at the court that has jurisdiction over him at this time because of where he is imprisoned. Because Zakiya has never filed under § 2255, his current petition is not barred by § 2244.

The AEDPA did not alter or amend § 2241.[7] *See Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 2337, 135 L.Ed.2d 827 (1996). Congress' silence on § 2241, in comparison to the major changes it visited on § 2254 and § 2255, indicates that Congress intended no bar to apply to successive § 2241 petitions. Several circuits concur that successive § 2241 petitions are not barred. As the D.C. Circuit stated in 1998:

[B]ecause Congress did not explicitly remove our jurisdiction over those section 2241 actions that do not attack the petitioner's conviction or sentence, that jurisdiction necessarily continues in effect. This is plain from *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), in which the Supreme Court found that although the AEDPA bars habeas corpus petitioners who are denied leave to file a second or successive petition from challenging this decision through certiorari, see AEDPA § 106(b)(3)(E), it does not withdraw the Court's authority to entertain original habeas corpus petitions under 28 U.S.C. §§ 2241 and 2254. This was so even though a petitioner may be able to use the latter route to circumvent Congress's apparent intent in enacting the AEDPA to bar all review of such decisions.

---

7. Section 2241 provides that:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions

(c) The writ of habeas corpus shall not extend to a prisoner unless—
(2) He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2241.

*Blair–Bey v. Quick,* 151 F.3d 1036, 1046 (D.C.Cir.1998). In 1997, the Ninth Circuit held that the new restrictions on successive petitions do not prevent a petitioner from bringing a § 2241 claim after he has already brought a § 2255 claim. *See United States v. Lorentsen,* 106 F.3d 278 (9th Cir.1997). Furthermore, in 1998, the Second Circuit held that a § 2255 petition that followed a § 2241 petition was not barred. *See Corrao v. United States,* 152 F.3d 188, 191 (2d Cir.1998), *citing Chambers v. United States,* 106 F.3d 472, 474 (2d Cir.1997). If a § 2241 petition is not barred when it follows a § 2255 petition, and if a § 2255 petition is not barred .when it follows a § 2241 petition, *a fortiori,* a § 2241 petition that follows an earlier § 2241 petition cannot be barred.[8]

Not only are Zakiya's successive § 2241 claims permissible, but they are entirely appropriate. When a § 2255 petition proves "inadequate or ineffective to test the legality of detention, a federal prisoner may seek a writ of habeas corpus pursuant to" § 2241. *In re Vial,* 115 F.3d 1192, 1194 (4th Cir.1997) (internal ellipses omitted). In fact, § 2241 is the only mechanism for a prisoner to challenge the execution, as opposed to the validity, of his federal sentence. *See United States v. Addonizio,* 442 U.S. 178, 185–86, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (holding that § 2255 is unavailable to attack execution of sentence); *In re Vial,* 115 F.3d at 1194 n. 5 ("attacks on the execution of a sentence are properly raised in a § 2241 petition"); *United States v. Miller,* 871 F.2d 488, 489 (4th Cir.1989) (holding that an attack on the computation and execution of a sentence must come in the form of a § 2241 petition); *Corrao,* 152 F.3d at 191 ("a mo-

tion under § 2241 challenges the execution, not the imposition, of the sentence"). For Zakiya, who long ago completed his sentence, a § 2255 petition would bring no relief and, therefore, § 2241 is the only habeas corpus basis available. In sum, we hold that Zakiya's pending petitions are not barred by the successive petition doctrine. Moreover, even if there were a successive petition problem, the "ends of justice" clearly mandate that we look at the merits of this case.

## II. *The Merits of Zakiya's Petition*

Having established that this Court has jurisdiction to hear Zakiya's habeas corpus petition, we now turn to .the merits of his argument that his confinement violates "the Constitution or laws or treaties of the United States." § 2241(c)(3). When the district court in West Virginia first considered Zakiya's argument, the factual setting differed greatly from the one before us. That court considered the case before Zakiya's release date, May 5, 1996, and as a result, nothing in the court's opinion addressed the astonishing implications of the BOP's reading of 18 U.S.C.A. § 3624(e). *See Ross v. Thompson,* 927 F.Supp. 956, 958 (N.D.W.Va.1996). The BOP's view is that until Zakiya pays the fine or signs the Agreement, he can be held indefinitely— past his release date, past the end of his supervised release, and even for life. *See* Resp. Submission to the Court's Inquiry of Jan. 25, 1999 ("[I]t is the BOP's position that Zakiya may remain imprisoned pursuant to 18 U.S.C. § 3624(e) until he complies with the requirement(s) mandated by Congress and explained to Zakiya in the *Ross* decision.") If we accept the BOP's

---

**8.** The only adverse authority we found came from two Tenth Circuit Opinions (one of which was unpublished) stating that successive § 2241 petitions were barred by *McCleskey v. Zant,* 499 U.S. 467, 483–84, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). *See George v. Perrill,* 62 F.3d 333 (10th Cir.1995); *Ryder v. Jenkins,* 94 F.3d 656, 1996 WL 464029, *1 (10th Cir.1996). Although *McCleskey* did deal with the abuse-of-the-writ doctrine, the Supreme Court did not explicitly apply that doc-

trine to § 2241 petitions. Furthermore, as the Tenth Circuit indicated, successive petitions are barred "unless the ends of justice require consideration of the merits." *George,* 62 F.3d at 334. Because no court has considered the merits of Zakiya's case, and because "the ends of justice" require consideration of the plight of prisoner held nearly three years past his release date for failure to sign a form, we believe that Zakiya's § 2241 petition is not barred by *McCleskey v. Zant.*

reading of the statue, we effectively must find that Congress delegated to the BOP, an executive branch agency, the authority to extend a defendant's sentence beyond that ordered by an Article III court. Such a proposition would contravene basic tenets of separation of powers and result in an unconstitutional delegation of judicial power to the executive branch.

### A.

It is well established that "the judicial power" is vested solely in Article III courts, *see* U.S. Const. art. III, § 1, with very limited exceptions.[9] Numerous courts have confirmed that imposing a sentencing is part of the judicial power. *See Ex parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916) (holding that imposition of punishment is a judicial function); *United States v. Johnson*, 48 F.3d 806, 808–9 (4th Cir.1995), *citing Ex Parte United States*, 242 U.S. 27, 41, 37 S.Ct. 72, 61 L.Ed. 129 (1916) ("imposition of a sentence ... is a core judicial function" that "cannot be delegated to nonjudicial officers"); *United States v. Griffith*, 85 F.3d 284, 290 (7th Cir.1996) (noting that *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), was "based, in large degree, on the fact that the power to determine sentences had always resided in the judicial branch"); *United States v. Earley*, 816 F.2d 1428, 1444 (10th Cir.1987) (describing the sentencing power as a "judicial power"); *United States v. Denson*, 588 F.2d 1112, 1127 (5th Cir.1979) (analyzing "the judicial power to sentence"); *Hood v. United States*, 469 F.2d 721, 722 n. 2 (8th Cir. 1972) (discussing the "judicial power to impose a sentence"); *United States v. Golino*, 956 F.Supp. 359 (E.D.N.Y.1997) ("The imposition of sentence is a core judicial function, and determination of the timing and schedule of restitution installment payments is not the type of duty that may be delegated."); *Aubin v. United States*, 943 F.Supp. 126, (D.Mass.1996), *citing*

*United States v. Johnson*, 48 F.3d 806, 808–9 (4th Cir.1995) ("The basic point is that the imposition of a sentence, including determination of conditions of supervised release, is a core judicial function, the delegation of which may be limited by Art. III of the Constitution.").

The distinction between executive power over the execution of a sentence and judicial power over the imposition of a sentence was explained nearly seventy years ago by the Supreme Court:

> The judicial power and the executive power over sentences are readily distinguishable. To render judgment is a judicial function. To carry the judgment into effect is an executive function. To cut short a sentence by an act of clemency is an exercise of executive power which abridges the enforcement of the judgment, but does not alter it qua judgment. To reduce a sentence by amendment alters the terms of the judgment itself and is a judicial act as much as the imposition of the sentence in the first instance.

*United States v. Benz*, 282 U.S. 304, 311, 51 S.Ct. 113, 75 L.Ed. 354 (1931). Thus, although the executive branch may "cut short a sentence," altering the actual terms of a sentence and imposing a sentence in the first instance are solely "judicial acts."

The statutes governing federal sentencing confirm that courts—and no other federal bodies—are vested with the power to impose a sentence. Section 3551 of the Chapter on Sentences in the United State Code provides that "a defendant who has been found guilty of an offense ... shall be sentenced *in accordance with the provisions of this subchapter.*" 18 U.S.C.A. § 3551(a) (1985) (emphasis added). Section 3553 repeatedly states that "[t]he *court* shall impose a sentence" or "[t]he *court*, at the time of sentencing, shall state in open court the reasons for its imposition

---

9. For a complete discussion of the exceptions, consult Erwin Chemerinsky, Federal Jurisdiction 210–45 (1994). Also, see the Supreme Court's discussion in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 63–70, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

of the particular sentence." *Id.* (Supp. 1999) (emphasis added); *see also* §§ 3554–3556, 3562–3564; 3572 (1985). The statutes dealing with imprisonment, *see* §§ 3582–3586, also speak exclusively of "the court," and never once mention that any other branch or agency of the government has the authority to impose a term of imprisonment. In fact, we have found no instance where any federal entity—other than a judicial officer of the United States—has been authorized to commit a person to a term of imprisonment.

### B.

Given this authority concerning the judicial power over sentencing, we now turn to the issue of whether a delegation of that power to a non-Article III entity is permissible. In *United States v. Johnson*, the Fourth Circuit emphasized that "imposition of a sentence ... is a core judicial function" that "cannot be delegated to non-judicial officers." *Johnson*, 48 F.3d at 808–09, *citing Ex Parte United States*, 242 U.S. 27, 41, 37 S.Ct. 72, 61 L.Ed. 129 (1916). *Johnson* involved an Article III court's decision to delegate to a probation officer the power to set aspects of a defendant's restitution. The Fourth Circuit held that although non-judicial officers could "support" judicial functions, "the court must retain the right to review findings and to exercise ultimate authority for resolving the case or controversy." *Id.* at 809, *citing United States v. Raddatz*, 447 U.S. 667, 683, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("holding that delegating the role of factfinder and recommender to magistrate judges under the Federal Magistrate Act does not violate Art. III 'so long as the ultimate decision is made by the district court' "). The regime in *Raddatz* was upheld only because Congress explicitly stated in the Federal Magistrate Act that the non-Article III officers—i.e., the magistrate judges—were subject to oversight and supervision by an Article III court. *See Raddatz*, 447 U.S. at 681, 100 S.Ct. 2406; *see also Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 76–87, 102 S.Ct. 2858, 73 L.Ed.2d

598 (1982) (finding the Bankruptcy Act of 1978 unconstitutional under Article III because "essential attributes of the judicial power" were not retained in an Article III court).

In deciding whether Congress may delegate judicial power to the Bureau of Prisons under § 3624(e), we must analyze whether the BOP's decisions are subjected to sufficient oversight and control by Article III courts. Neither the language of § 3624(e) nor any BOP policy statement to which we have been directed provides for an on-the-record proceeding to determine whether the prisoner has "adhered" to the requirements of the statute; thus, no district court could review a prisoner's case to determine whether the BOP is improperly detaining a prisoner who is otherwise eligible for supervised release. The prisoner has no right to appeal the BOP's decision to a district court, and he has no right to counsel, as he would in any other sentencing proceeding. Nothing in § 3624(e) indicates that the BOP even needs to inform the prisoner of its decision. He can be detained indefinitely with no explanation and no avenue to contest the decision. In short, § 3624(e) contains no suggestion—let alone an explicit statement—by Congress that a BOP decision to hold a prisoner past his release date is subject to oversight by an Article III court. Therefore, the BOP's reading of § 3624(e) posits an unconstitutional delegation of judicial power to a non-Article III body.

### C.

Accepting the respondents' reading of § 3624(e) would thus require us to strike the statute as an unconstitutional delegation of judicial power to the executive branch. However, "[f]ederal statutes are to be so construed as to avoid serious doubt of their constitutionality." *Machinists v. Street*, 367 U.S. 740, 749, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); *see also NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 500–01, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). As the Supreme Court has

made clear, "[w]here such 'serious doubts' arise, a court should determine whether a construction of the statute is 'fairly possible' by which the constitutional question can be avoided." *CFTC v. Schor,* 478 U.S. 833, 841, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), *citing Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). Although the BOP's reading of § 3624(e) raises "serious doubts" about its constitutionality, the statute may easily be interpreted to avoid the constitutional question. Quite simply, we read § 3624(e) to establish that no prisoner shall be released on supervision before his release date unless such prisoner agrees to adhere to an installment schedule to pay his fine. This reading, in effect, gives the BOP authority to deny prisoners statutory good time credits for failure to sign the agreement. However, once a prisoner has served his entire sentence, the BOP no longer has authority to hold a prisoner.

This reading spares the statute from the constitutional knife and is consistent with other powers Congress has given to the BOP. The congressional enabling statute, which outlines the BOP's duties and functions, provides, in part:

(a) In general.—The Bureau of Prisons, under the direction of the Attorney General, shall—

(1) have charge of the management and regulation of all Federal penal and correctional institutions;

(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;

(4) provide technical assistance to State and local government in the improvement of their correctional systems; and

(5) provide notice of release of prisoners in accordance with subsection (b).

18 U.S.C.A. § 4042 (1985 & Supp.1999). As is clear from the text of the statute, extending a prisoner's sentence falls outside of the scope of the BOP's authority.

Second, our reading of § 3624(e) accords with other parts of the statute. For example, § 3624(a) states: "A prisoner *shall be released* by the Bureau of Prisons *on the date of the expiration of the prisoner's term of imprisonment,* less any time credited toward the service of his sentence." § 3624(a) (emphasis added). Subsection (a) does not state, "except as provided in subsection (e)." Subsection (a) puts forward a basic rule: Zakiya "shall be released" on May 5, 1996. Holding him past May 5, 1996, contravened § 3624(a). Third, our reading will not frustrate Congress' efforts to ensure that fines are collected. If a released prisoner "knowingly fails to pay a delinquent fine or restitution the court may resentence the defendant to any sentence which might originally have been imposed." § 3614(a). If Zakiya, once released from custody, continues to refuse to pay his fine, he may wind up right back where he is. However, that result would not offend core principles of our constitutional regime because the resentencing proceeding would be adequately conducted by an Article III court.

Our interpretation of § 3624(e) also protects the uniformity in sentencing that Congress and the Supreme Court have mandated through the Sentencing Guidelines. *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Allowing the BOP to extend sentences beyond the maximum imposed by an Article III court would eviscerate the very goals of the sentencing guidelines. In short, our narrower, more precise reading of § 3624(e) harmonizes crucial constitutional, statutory and policy considerations and thus salvages an otherwise problematic law.

## CONCLUSION

Given what we believe is the proper interpretation of § 3624(e), we find that the statute does not permit the Bureau of Prisons to hold Zakiya past the period of incarceration imposed by the sentencing court, which, in this case, was May 5, 1996. Therefore, we will grant petitioner's request for a writ of habeas corpus under 28 U.S.C. § 2241, and we will order the Bureau of Prisons to release Zakiya into supervised released forthwith.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, petitioner's Third Amended Petition for Writ of Mandamus and Habeas Corpus is GRANTED, and it is hereby

ORDERED that the Bureau of Prisons release petitioner from custody into supervised released forthwith.

This Order moots all pending motions in this civil action.

The Clerk is directed to forward copies of this Order to counsel of record, petitioner, the Honorable Federick J. Motz, the U.S. Probation Offices for the District of Maryland and the Eastern District of Virginia, and the United States Marshal.